# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
### Civil Action No 3: 22 - cv- 83

| | |
|---|---|
| NOBLE BOTTLING, LLC, and RAYCAP ASSET HOLDINGS LTD., <br><br>    Plaintiffs, <br><br>v. <br><br>REINHART HOLDINGS, LLC, JASON M. TORRES a/k/a MARK WILLIAMS, JORDANA WEBER a/k/a ANA BOURNE, a/k/a ANA TORRES, ARTHUR SHERMAN, and NASAR ABOUBAKARE, <br><br>    Defendants. | **COMPLAINT & DEMAND FOR JURY TRIAL** |

Plaintiffs Noble Bottling, LLC ("Noble") and Raycap Asset Holdings Ltd. ("Raycap") (collectively, "Plaintiffs"), by and through their counsel, commence this action against Defendants Reinhart Holdings, LLC ("Reinhart"), Jason M. Torres a/k/a Mark Williams ("Torres"), Jordana Weber, a/k/a Ana Bourne, a/k/a Ana Torres ("Weber"), Arthur Sherman, ("Sherman") and Nasar Aboubakare ("Aboubakare").

## SUMMARY OF ACTION

1.      Plaintiffs bring this action to recover the damages they have suffered, due to Defendants' fraudulent and negligent misrepresentations, in addition to the actions and inactions of others who created, caused, contributed to, or participated in the harm to Plaintiffs. Noble was introduced in 2018 to Reinhart by Sherman of Mayfair Capital Investment Management, Ltd. ("Mayfair Capital"), who represented that Reinhart's

1

principal, "Mark Williams," was a wealthy individual who could provide financing to Noble in the formation and start-up of Noble's business operations. Based on those representations, Noble entered into a loan agreement with Reinhart under the terms of which Reinhardt agreed to loan Noble $55.3 million and Noble agreed to make a good-faith deposit of $2,765,000 into a restricted escrow account. To obtain the funds for the good-faith deposit of $2,765,000, Noble entered into a separate short-term loan agreement with Plaintiff Raycap. During negotiations, Reinhart was represented by Gora LLC and Richard Gora, and Noble was represented by Hull & Chandler P.A.

2. Other parties, including Hull & Chandler P.A. ("Hull and Chandler"), Nathan M. Hull (collectively with Hull and Chandler, "Hull"), Gora LLC and Gora (collectively, "Gora"), and Joshua A. Kushner ("Kushner"), caused damages to Plaintiffs by, *inter alia*, their failure and/or refusal to fulfill their responsibility to do even the most basic of due diligence required to competently represent Noble in this transaction and/or participating in the fraud committed by Torres, Weber, Sherman and Aboubakare. However, Defendants' fraudulent and negligent misrepresentations were the catalyst of Plaintiffs' damages.

3. As a result of various representations made by Defendants, and assurances by others involved in the transactions, including that the escrow account for the good-faith deposit was restricted, Raycap lent $2,765,000 to Noble. Raycap, in turn, deposited the funds into the escrow account. However, the entire loan transaction turned out to be a farce as the escrow account was not restricted. "Mark Williams" was a false identity used by Torres, and "Ana" was a false identity used by Weber. Furthermore, Weber was revealed

2

to be the owner of Mayfair Capital. Because the escrow account was not restricted, Torres and Weber were able to steal the $2,765,000 that was deposited into the escrow account.

4. Defendants Sherman and Aboubakare failed to disclose to Plaintiffs that the brokerage firm, Mayfair Capital was owned and operated by Weber, a known fraudster, failed to disclose that they did not have any prior dealings with "Mark Williams" of Reinhart, and failed to disclose that they did not perform any due diligence regarding this investment source.

5. Sherman and Aboubakare, acting in their capacity as employees for Mayfair Capital failed in their responsibility to do even the most basic of due diligence required to provide services for its client Noble and, as a result, has cost Plaintiffs millions of dollars, losses which could have been avoided had Sherman and Aboubakare adequately discharged their obligations to Noble.

## THE PARTIES

6. Plaintiff Noble is a Delaware limited liability company with its principal place of business in Mecklenburg County, North Carolina.

7. Plaintiff Raycap is a foreign corporation registered with the government of Cyprus.

8. Defendant Arthur Sherman is now a Senior Financial Advisor at Merrill Lynch in New York City, NY.

9. Defendant Arthur Sherman touts on Morgan Stanley's website that "The best financial relationships begin with clients empowered by and confident in their financial decisions. Our team earns trust by helping clients understand and embrace all elements of

3

their financial life through education and transparency."[1]

10. Defendant Nasar Aboubakare is now a Financial Advisor at Edward D. Jones & Co. LP in Huntington Beach, CA.

11. Defendant Aboubakare touts on Edward Jones website that, "I believe it's important to invest my time in understanding what you're working toward, whether you're planning for retirement, saving for college for children or grandchildren, or just trying to protect the financial future of the ones you care for the most before you invest your money. Working closely with you and your CPA, attorney, and other professionals, I can help determine the most appropriate financial strategy for you and your family. We also monitor your progress to help make sure you stay on track or determine if any adjustments need to be made. Throughout it all, we're dedicated to providing you top-notch client service."[2]

12. Defendant Reinhart is a limited liability corporation organized and existing under the laws of the State of Montana, with its principal place of business in Kalispell, Montana. Upon information and belief, Reinhart was involuntary dissolved in 2019.

13. Defendant Torres is an individual who, at all times relevant hereto, was a resident of California.

14. Defendant Weber is an individual who, at all times relevant hereto, was a resident of California.

---

[1] Morgan Stanley, Arthur Sherman, https://advisor.morganstanley.com/arthur.sherman (last visited March 1, 2022).

[2] Edward Jones, Nasar Aboubakare, https://www.edwardjones.com/us-en/financial-advisor/nasar-aboubakare (last visited March 1, 2022).

4

## VENUE AND JURISDICTION

15. This Court has jurisdiction of this action, pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship among all parties and because the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).

16. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this action occurred in this district.

## CHOICE OF LAW

17. North Carolina law applies to these causes of action because the harm and economic loss incurred by Plaintiffs as a result of Defendants' conduct occurred in the State of North Carolina. *See Boudreau v. Baughman*, 322 N.C. 331, 335 (1988); *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 697 (2010).

18. Venue is appropriate in Mecklenburg County under N.C. Gen. State § 1-82.

## ALLEGATIONS

### Noble is Induced into Entering the Loan Agreement with Reinhart

19. In or about October 2018, Noble began seeking financing for its plans to commence its business operations in North Carolina. Sherman, a purported agent for Mayfair Capital, introduced Noble to Reinhart. Noble engaged Sherman, in his capacity as partner of Mayfair Capital, to act as the broker for a $55 million loan related to the formation and start-up of Noble. Sherman represented that Reinhart's principal was an individual named "Mark Williams," and that Mark Williams was a wealthy individual who, through Reinhart, could provide the financing sought by Noble.

20. Sherman assured principals of Noble that he had previously worked with "Mark Williams" of Reinhart and Sherman would vouch for "Mark Williams" as an investor.

21. Sherman later brought Defendant Aboubakare on as an additional broker to aid in the loan.

22. Unbeknownst to Noble, "Mark Williams" was not a real person, but rather a false identity created by Torres. Also unbeknownst to Noble, Mayfair Capital was an entity owned and controlled by Torres' associate, Weber. On information and belief, Reinhart was an entity owned by Torres, which was used by Torres and Weber to facilitate the commission of criminal acts against Noble, Raycap, and others.

### **Reinhart Induces Noble into Entering into a "Loan Agreement"**

23. As a direct result of the course of action that Sherman and Aboubakare set in motion through their introduction and assurances, on December 27, 2018, Noble entered into a Facility Term Letter agreement with Reinhart, by and through "Mark Williams" who was purportedly its duly authorized officer to finance Noble's business operations (the "Loan Agreement").

24. Pursuant to the terms of the Loan Agreement, Reinhart agreed to loan Noble the sum of $55,300,000 (the "Loan Amount"), subject to certain conditions precedent, including (1) Reinhart's approval based on satisfactory completion of its own due diligence review of Nobel's business plan, operations and finances ("Loan Approval"); and (2) once Reinhart's Loan Approval was issued, Noble's good-faith deposit of funds equal to five percent of the Loan Amount, ($2,765,000) (the "Deposit").

25. Reinhart represented that it had established a restricted bank account at Bank of America, governed by terms and conditions that required Bank of America to return the Deposit to Noble if Reinhart failed to meet certain express funding obligations on or before certain express deadlines (the "Restricted Account"). Likewise, Gora LLC and Gora, who acted as counsel for Reinhart in relation to the Loan Agreement, represented that Reinhart had established the Restricted Account.

**Noble Obtains a Short-Term Loan from Raycap to Fund the Deposit**

26. Following the sequence of events set in motion by the Defendants herein, representations by Reinhart concerning the Restricted Account, and representations by attorneys Gora, and those of Hull and Kushner that they had performed their diligence and verified the Restricted Account, Noble entered into a separate short-term loan agreement with Raycap (the "Funding Agreement") to provide the funds for the Deposit.

27. Pursuant to the Funding Agreement, Raycap required Noble to provide written verification from Bank of America that (a) the Restricted Account was a bona fide Bank of America account, (b) the Restricted Account was governed by a Bank of America "Restricted Bank Holding Instructions Agreement," and (c) the "Restricted Bank Holding Instructions Agreement" prevented the Deposit from being withdrawn or transferred by any party other than Noble without Noble's prior express written approval (the "Restricted Account Verification").

28. Further to the Deposit Loan Agreement, in or around January 2019, Noble advised Reinhart that Noble had entered into the Funding Agreement with Raycap and that Noble's ability to provide the Deposit was contingent upon Noble's ability to satisfy the

7

Restricted Account Verification. In connection therewith, Noble asked Reinhart to provide the contact information of a Bank of America representative authorized to provide the Restricted Account Verification. In response, Reinhart, through its counsel Gora, claimed that due to banking regulations and security policies, Bank of America could not provide the Restricted Account Verification directly to Raycap. Reinhart represented that Bank of America would, however, provide the Restricted Account Verification to Reinhart's legal counsel who, in turn, would provide an opinion letter to Noble and Raycap that would satisfy the Restricted Account Verification condition (the "Legal Opinion Verification").

29. Reinhart was aware at the time that the foregoing written representations of fact set forth in the Legal Opinion Verification, and in reliance on Hull stating that he was satisfied with all aspects of the transaction, including his diligence into the restricted account, and instructing Plaintiffs it was safe to fund, Raycap funded $2,765,000 with the full assurances of Hull and Kushner that the money was secure in a restricted bank account, induced Raycap and Noble to form the belief that the Restricted Bank Holding Instructions Agreement prevented Reinhart from transferring or withdrawing any portion of the Deposit or other funds held in the Restricted Account without Noble's prior written consent.

30. Raycap loaned Noble the Deposit in the amount of two million seven hundred sixty-five thousand dollars ($2,765,000.00). Raycap then wire transferred the Deposit to the Restricted Account pursuant to instructions provided by Reinhart on advice of counsel.

31. Raycap transferred the Deposit to the Restricted Account in reliance on (i) the Legal Opinion Verification and (ii) Hull's assurances that he had completed his

8

diligence, so it was safe to proceed with funding the Deposit (specifically, Hull stated "all of the boxes [have been] checked", and that Raycap could safely proceed with funding the Deposit).

**<u>Reinhart Breaches the Loan Agreement and Refuses to Return the Deposit</u>**

32. Reinhart materially breached the Loan Agreement on or about April 19, 2019 by failing to timely fund the Loan.

33. Beginning on or about April 26, 2019, Noble sent Reinhart formal demands to immediately return the full amount of the Deposit in accordance with the terms of the Restricted Bank Holding Instructions Agreement. Nevertheless, Reinhart, through Torres and Weber, continued to conceal their fraud and, made false statements that gave the impression that Reinhart was working towards fulfilling its obligations under the Loan Agreement.

34. On April 27, 2019, Torres (posing as "Mark Williams") sent fraudulent documents to Noble purporting to show a Bank of America confirmation and a picture of a cashier's check made out to Noble.

35. On April 29, 2019, Gora sent an email to Noble, stating that "Mark will be submitted a total of 11 transactions totaling $5MM . . . ."

36. On April 30, 2019, Gora sent an email to Noble, stating that "[a]ccording to Mark, the first several transactions were approved (*i.e.*, deducted from the bank balance) and the remainder were not until Mark cleared the fraud department." In that same email, Gora forwarded fraudulent transaction confirmations that he had purportedly received from Torres.

37. In or around mid-May 2019, a representative of Noble, contacted the notary who purportedly notarized Mark William's signature on the documents that were used to defraud Noble and Raycap, and the notary stated, in no uncertain terms, that she did not notarize any such documents, did not know Mark Williams, and that her signature was a forgery.

38. On May 23, 2019, Gora forwarded an email to Noble from Weber (posing as "Tina," Mark Williams' assistant), which stated that the PPI funds were "currently in transit to [Noble's] account back in London so there should be no issues."

39. On July 19, 2019, Weber (posing as "Tina") sent an email to Noble stating that "the PPI is currently in transit and will be received by Mr. Richard Gora in the next 48-72 hours."

40. On or about June 21, 2019, after Reinhart failed to return any portion of the Deposit, Noble made a formal demand upon Bank of America to return the Deposit in accordance with the Restricted Bank Holding Instructions Agreement. Bank of America's response, a letter dated 27 June 2019 from its Assistant General Counsel, informed Noble that it had "no record of the 'Restricted Agreement'" . . . [n]or . . . any record of a Bank of America representative signing such a document."

41. During communications with principals of Noble, Sherman continually assured that "Mark Williams" was a legitimate person and that the Loan Agreement was not a fraud.

42. During communications with principals of Noble, Aboubakare confessed that Sherman was not a partner with Mayfair Capital, as Sherman had previously

10

represented. Aboubakare disclosed that the actual owner of Mayfair Capital was "Ana Bourne" and that he was aware of the various fraud monitoring websites, including the "Ripoff Report" connected to this name. Aboubakare admitted that he did not disclose any of this information to Plaintiffs.

43. Shortly after receiving Bank of America's response, Raycap and Noble learned that the Federal Bureau of Investigation had arrested Jason M. Torres and Jordana Weber, charging them with federal wire fraud conspiracy (18 U.S.C. §§1349) and federal money laundering (18 U.S.C. §§1956(a)(1)(A)(i) and 1956(a)(1)(B)(i)). *See United States of America v. Jason M. Torres and Jordana Weber a/k/a Ana Bourne a/k/a Ana Torres*, Mag. No. 19-7380.

## FIRST CLAIM FOR RELIEF
(Fraud Against Defendants Reinhart, Torres, Weber)

44. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

45. Defendants made various misrepresentations and omissions, as described in detail above, that induced Noble to enter into the Loan Agreement with Reinhart, Noble and Raycap to enter into the Funding Agreement, and Raycap to make the Deposit into the Restricted Account.

46. Among other things, Torres and Weber represented themselves as (i) "Mark Williams" and "Tina", (ii) Reinhart was a proper entity used to finance companies; and (iii) Reinhart, Torres, and Weber represented that they would fund the Loan Amount and complying with the terms of the Loan Agreement despite having no intention to do so.

11

47. Reinhart, Torres, and Weber made these misrepresentations and omissions for the purpose of influencing and inducing Noble and Raycap to act in a manner that secured a benefit for Reinhart, Torres, and Weber.

48. Reinhart, Torres, and Weber had no intention of funding the Loan Amount or complying with the terms of the Loan Agreement.

49. Noble and Raycap reasonably relied on Reinhart, Torres, and Weber's misrepresentations and omissions.

50. As a consequence of Noble and Raycap's reasonable reliance on Reinhart, Torres, and Weber's misrepresentations and omissions, Raycap and Noble each have suffered material harm and substantial monetary damages of at least $2,765,000.

## SECOND CLAIM FOR RELIEF
(Conversion Against Defendants Reinhart, Torres, Weber)

51. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

52. Reinhart, Torres, and Weber made various misrepresentations and omissions, as described in detail above, that induced Plaintiffs to make the Deposit into the Restricted Account.

53. Plaintiffs were the rightful owners of the Deposit taken by Reinhart, Torres, Weber as Reinhart failed to fund the Loan pursuant to the terms of the Loan Agreement.

54. Beginning in April 2019, Plaintiffs demanded a return of their money to Reinhart, to which Reinhart, Torres, Weber refused.

55. As a direct and proximate result of Reinhart, Torres, and Weber's actions, Raycap and Noble each have suffered material harm and substantial monetary damages of at least $2,765,000.

**THIRD CLAIM FOR RELIEF**
(Negligence Against Defendants Sherman and Aboubakare)

56. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

57. As a result of the broker-client relationship, Sherman and Aboubakare owed a duty of care to their client, Noble.

58. Sherman and Aboubakare breached their duty to Noble by, among other things, neglecting to personally verify the legitimacy of "Mark Williams," and Reinhart.

59. Sherman failed to disclose his lack of due diligence on the matter, but actively lied, informing principals of Noble that he had prior dealings with "Mark Williams" as well as being a partner of Mayfair Capital.

60. Plaintiffs reasonably and foreseeably relied on Sherman and Aboubakare's advice that the parties involved were legitimate, and reasonably and foreseeably entered into the Loan Agreement with Reinhart.

61. As a direct and proximate result of Sherman and Aboubakare's conduct, as set forth above, Plaintiffs have suffered material harm and substantial monetary damages of at least $2,765,000 and have incurred substantial unnecessary legal fees.

62. Based upon the foregoing, Plaintiffs are entitled to judgment in their favor for damages in an amount to be determined at trial, plus interest, costs and attorney's fees.

## FOURTH CLAIM FOR RELIEF
(Fraud Against Defendants Sherman and Aboubakare)

63. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

64. Sherman and Aboubakare made various misrepresentations and omissions as described in detail above that induced Noble to enter into the Loan agreement with Reinhart, Noble and Raycap to enter into the Funding Agreement, and Raycap to make the Deposit into the Restricted Account.

65. Among other things, Aboubakare confessed to principals of Noble that he was aware that Mayfair Capital was owned, at least in part, by "Ana Bourne," which should have been disclosed to the plaintiffs before entering into the Loan Agreement. As discussed above, a simple internet search would have revealed fraudulent activity related to this alias and would have stopped Plaintiffs from entering into the Loan Agreement. Aboubakare disclosed to principals of Noble that he was aware of the "Ripoff Report" mentioned above.

66. When principals of Noble contacted Sherman after the Loan Amount was not funded, Sherman assured that it was "not a fraud," that he had executed the necessary due diligence, and that Mark Williams, through Reinhart, was a legitimate funding source.

67. Sherman and Aboubakare made these misrepresentations and omissions for the purpose of influencing and inducing Noble and Raycap to act in a manner that secured a benefit for Reinhart, Torres, Weber

68. Plaintiffs reasonably relied on Sherman and Aboubakare's misrepresentations and omissions.

69. Even after the scheme began to unravel, Sherman and Aboubakare continued to make representations and misrepresentations to keep this fraudulent scam from becoming public.

70. Aboubakare effectively admitted his knowledge of the Ponzi scheme by stating to a representative of Noble that Sherman was not a partner with Mayfair Capital, as Sherman had previously represented

71. As a direct and proximate result of Sherman and Aboubakare's misrepresentations, Plaintiffs have suffered damages of not less than $2,765,000, and have incurred substantial unnecessary legal fees.

72. Based upon the foregoing, Plaintiffs are entitled to judgment in their favor for damages in an amount to be determined at trial, plus interest, costs and attorney's fees.

## FIFTH CLAIM FOR RELIEF
(Negligent Misrepresentation Against Defendants Sherman and Aboubakare)

73. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

74. Sherman and Aboubakare made various misrepresentations, as described in detail above, that induced Noble to enter into the Loan Agreement with Reinhart, Noble and Raycap to enter into the Funding Agreement, Raycap to disburse the Deposit funds to Noble, and Noble to make the Deposit into the Restricted Account.

75. Sherman and Aboubakare neglected to conduct an adequate investigation concerning "Mark Williams" and Reinhart before making various misrepresentations which, as set forth above, induced Noble and Raycap to act to their detriment. Sherman

15

and Aboubakare should have known that: (i) "Mark Williams" and "Tina" were imposters, (ii) the individuals pretending to be "Mark Williams" and "Tina" were in fact Torres and Weber, respectively' (iii) Reinhart was an entity that Torres and Weber were using to facilitate the commission of criminal acts against Raycap, Noble and others; (iv) "Ana Bourne," is a known fraudster, and (v) Reinhart, Torres and Weber had no intention of funding the Loan Amount or complying with the terms of the Loan Agreement.

76. As direct and proximate result of Sherman and Aboubakare's negligent misrepresentations, Raycap and Noble each have suffered material harm and substantial monetary damages of at least $2,765,000.

77. Based on the foregoing, Plaintiffs are entitled to judgment in their favor for damages in an amount to be determined at trial, plus interest, costs and attorney's fees.

## SIXTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty Against Defendants Sherman and Aboubakare)

78. Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

79. As a result of the broker-client relationship and nature of the transactions, Sherman and Aboubakare had a fiduciary relationship with their clients, Noble and Raycap.

80. Sherman and Aboubakare breached their duty to Plaintiffs by, among other things, neglecting to verify any of the statements made by "Mark Williams" and representing that they had previous interactions with "Mark Williams".

81. Plaintiffs reasonably and foreseeably relied on Sherman and Aboubakare advice about "Mark Williams" and Reinhart, and reasonably and foreseeably believed that

16

Sherman and Aboubakare exercised reasonable diligence in their representations.

82. As a direct and proximate result of Sherman and Aboubakare's breach of the duty of care owed to Plaintiffs, as set forth above, Plaintiffs have suffered damages of not less than $2,765,000, and have incurred substantial unnecessary legal fees.

83. Based upon the foregoing, Plaintiffs are entitled to judgment in their favor for damages in an amount to be determined at trial, plus interest, costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays the Court as follows:

1. For compensatory and consequential damages in an amount to be determined by the Court;

2. For punitive and exemplary damages in an amount sufficient to deter Defendants and others from further engaging in the malicious, oppressive and/or fraudulent acts alleged herein in the future;

3. For prejudgment interest at the legal rate;

4. For attorney fees and costs of the suit to the extent permitted by law; and

5. For such other relief as the Court may deem just and proper,

Dated: March 2, 2022                                        Respectfully submitted,

RANDOLPH M. JAMES, P.C.
/s/ Randolph M. James
Randolph M. James NC Bar #10,000
PO Box 20060
Winston-Salem, NC 27120

Telephone: (336) 724-7707
Facsimile: (336) 724-9722
E-mail: rmjames@rmjameslaw.com

*Attorney for Plaintiffs*

**REED SMITH LLP**

By: */s/ Joseph J. Tuso*
Joseph J. Tuso (SBN 2403438)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA, 19103
Telephone: 215.851.8228
jtuso@reedsmith.com

*Pro hac admission to be filed*