IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00083-KDB-DCK

| | |
|---|---|
| NOBLE BOTTLING, LLC, RAYCAP ASSET HOLDINGS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> REINHART HOLDINGS, LLC, JASON M. TORRES, JORDANA WEBER, ARTHUR N. SHERMAN, AND NASAR ABOUBAKARE, <br><br> Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendant Jordana Weber's Motion to Dismiss (Doc. No. 18). In this action, Plaintiffs Noble Bottling, LLC ("Noble") and Raycap Asset Holdings Ltd. ("Raycap") assert claims against Defendants arising out of a loan and deposit arrangement that Plaintiffs claim was fraudulent. Weber, who is alleged to have been part of the fraud, seeks dismissal of the claims against her, arguing that the Court lacks jurisdiction over her and Plaintiffs' claims for fraud and conversion fail to state a claim. The Court has carefully reviewed the motion and considered the parties briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion.

I.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) seeks a dismissal for lack of personal jurisdiction. A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294

1

(4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." *Barclays Leasing Inc. v. National Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant ... factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id.*

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Due process prevents a Court from asserting jurisdiction over a defendant unless the defendant has certain

2

minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test ... '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.' " *New Wellington*, 416 F.3d at 294 (citing *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). A complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). Further, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991)); *Sec'y of State for Defense v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007).

3

Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Noble is a Delaware limited liability company with its principal place of business in Mecklenburg County, North Carolina. Doc. No. 11 at 3. Plaintiff Raycap is a foreign corporation registered with the government of Cyprus. *Id*. Defendant Reinhart Holdings, LLC, ("Reinhart") is a limited liability corporation organized and existing under the laws of the State of Montana, with its principal place of business in Kalispell, Montana. *Id*. at 4. Reinhart was involuntarily dissolved in 2019. *Id*. Defendant Weber is an individual who, at all relevant times hereto, was a resident of California. *Id*.

On December 27, 2018, Noble entered into a $55,300,000 Facility Term Letter Agreement (the "Loan Agreement") with Reinhart to finance Noble's business operations. Doc. No. 19 at 3. Under the Loan Agreement, Noble was required to provide Reinhart with a $2,765,000 deposit as a good faith measure. *Id*. In order to obtain the funds needed to make the deposit, Noble entered into a separate loan agreement with Raycap (the "Deposit Loan Agreement"), under which the funds for the deposit would be transferred to a "Restricted Account" at Bank of America. *Id*. Plaintiffs contend that this arrangement was fraudulent because the Defendants allegedly never intended to fund the loan and later absconded with the deposit, which was not in fact restricted as Plaintiffs believed.

Specifically, Plaintiffs claim Reinhart breached the Loan Agreement by failing to timely fund the loan on or about April 19, 2019. *Id*. at 4. Shortly after, on April 26, 2019, Noble formally demanded Reinhart to return the full amount of the deposit in accordance with the Restricted Bank

Holding Instructions. *Id*. Then, between April and July 2019, Weber sent two emails on behalf of Reinhart to Plaintiffs which were allegedly intended to falsely assure them that Plaintiff's funds were being returned in accordance with the Loan Agreement. *Id*. On May 23, 2019, Weber, posing as "Tina," a fictitious Reinhart employee, emailed Richard Gora, Reinhart's attorney, stating that the funds were "currently in transit" to Noble's account "so there should be no issues." *Id*. at 2. This email was subsequently forwarded to Plaintiffs. On July 19, 2019, Weber, again posing as "Tina," emailed Noble stating that "the PPI is currently in transit and will be received by Mr. Richard Gora in the next 48-72 hours." *Id*.

In their Amended Complaint, Plaintiffs have sued to recover their deposit amount, alleging, among numerous claims against the various defendants, claims of fraud and conversion against Weber. Weber has now moved to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and the Complaint fails to state claims against her under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

### III. DISCUSSION

#### A. Personal Jurisdiction

As noted above, Weber's personal jurisdiction challenge essentially folds into the question of "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (US 1945). To establish minimum contacts, a plaintiff may pursue either general or specific jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 711–12 (4th Cir. 2002). To establish general jurisdiction, (which is not alleged here) the defendant's activities in the state must have been "continuous and

5

systematic." *Id*. If specific jurisdiction is alleged (as in this case), the court exercises its power over a defendant when defendant's contacts within the state are the basis of the plaintiff's cause of action. *Id*.

In analyzing the contacts for specific jurisdiction, courts "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8 (1984). In conducting this inquiry, the Court must focus on "the quality and nature of [the relevant] contacts." *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 238 (D. Md. 1992), aff'd, 991 F.2d 1195 (4th Cir. 1993). The Court should not "merely ... count the contacts and quantitatively compare this case to other preceding cases." *Id*. Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is not thereby offended. *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). .

**1. Purposeful Availment**

Plaintiffs argue that Weber purposefully availed herself of the privilege of conducting activities in North Carolina by her emails into the state furthering the alleged fraud. In response, Weber contends that the two emails, which were both sent after the Loan Agreement had been executed, is not enough to establish that she "purposefully availed" herself of the privilege of conducting activities in North Carolina. To determine whether Weber purposefully availed herself of North Carolina, the Court asks whether "the defendant's conduct and connection with the forum

6

state are such that [she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A court "may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed [her] tortious conduct toward the forum state, knowing that that conduct would cause harm to the forum resident. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 (2003) (citing *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

The Court finds that Weber purposefully availed herself of North Carolina through her emails to Noble. The Fourth Circuit has held that emails and text messages directed at the forum can give rise to specific jurisdiction. *Lillie v. Guerra*, 559 F. Supp. 3d 464, 473 (M.D.N.C. 2021) (citing *Universal Leather, LLC*, 777 F.3d at 562. Also, in *ALS Scan*, the Fourth Circuit held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714 .

Applying the *ALS Scan* factors to this case, the Court finds that Plaintiffs have made a prima facie showing that Weber purposefully availed herself of North Carolina. The first *ALS Scan* factor is met because Weber directed electronic activity into North Carolina by sending two emails to Noble. The content of Weber's emails was aimed toward Noble, a business with a principal place of business in North Carolina. Plaintiffs allege that Weber's purpose for this electronic activity was to conceal the fact that the funds had been stolen. Doc. No. 11 at 10. Assuming the

truth of Plaintiffs' allegations at this stage of the proceedings, Plaintiffs have alleged that electronic activity was directed into North Carolina to directly affect a North Carolina business.

With respect to the second *ALS Scan* factor, the Court finds Plaintiffs have made a prima facie showing that Weber had a "manifested intent of engaging in business or other interactions" in North Carolina. 293 F.3d at 714. Again, Noble has its principal place of business in North Carolina, so Weber's emails into the state in alleged furtherance of the scheme establish that Weber intended to engage in interactions in North Carolina. *See Lostutter v. Olsen*, No. 1:16-cv-1098, 2017 WL 3669557, at *8 (M.D.N.C. Aug. 24, 2017) ("In part because [the plaintiff's] business was a brick-and-mortar store located in Kernersville, North Carolina, Defendants' attempts to disrupt his business were likely aimed at North Carolina.").

The last *ALS Scan* factor is also met because, as discussed below, the electronic activity created Plaintiffs' potential causes of action for fraud and conversion, which are cognizable in North Carolina's courts. Therefore, the Court finds Weber purposefully availed herself of North Carolina through her electronic activity.

**2. Claims Arising out of Activities Directed at the State**

Second, the Court finds that Plaintiffs' claims arose out of the activities Weber directed at North Carolina. "The second prong of the test for specific jurisdiction — that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009) (citing *Burger King*, 471 U.S. at 472 ; *Helicopteros Nacionales* , 466 U.S. at 414 ). For specific jurisdiction to apply, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the

8

forum State and is therefore subject to the State's regulation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and brackets omitted).

Weber argues that the emails she sent to Noble do not supply a basis for Plaintiffs' claims because the email was sent after the Loan Agreement was executed and the deposit funded. But like a get-away driver in a bank robbery who plays his role in the theft only after the money has left the bank, Weber cannot evade liability merely because her conduct occurred after Plaintiff's funds were taken. Although Weber's emails were sent after the Loan Agreement was executed, Plaintiffs' fraud claim and conversion claim against Weber arise from the alleged misrepresentations in her emails that Reinhart would fund the loan amount which it can reasonably be inferred sought to avoid the scheme being detected or at least delay efforts to recover the stolen money. *See* Doc. No. 1 at 11. Thus, assuming the truth of Plaintiffs' allegations at this stage of the proceedings, Plaintiffs have alleged sufficient facts showing Plaintiffs' claims arise out of Weber's conduct in North Carolina. *See Helicopteros Nacionales,* 466 U.S. at 414 ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction.") (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

### 3. Constitutional Reasonableness

Finally, the Court holds that the exercise of personal jurisdiction over Weber is constitutionally reasonable. While Weber might naturally prefer to defend against Plaintiffs' claims in her home forum in California, there has been no showing that it would be unduly burdensome for Weber to litigate in this Court. Also, North Carolina has an interest in this action because Noble's principal place of business at all relevant times was in North Carolina. Moreover, there is no apparent reason that this action cannot be effectively and efficiently tried in this Court,

9

as Plaintiffs have requested. Therefore, the exercise of jurisdiction in this Court will not "make litigation 'so gravely difficult and inconvenient' that [Weber] unfairly is at a 'severe disadvantage' in comparison to [her] opponent." *See Burger King*, 471 U.S. at 478.

### B. Rule 12(b)(6) Failure To State A Claim

#### 1. Fraud

In addition to her jurisdictional argument, Weber moves to dismiss the fraud and conversion claims against her for failure to state a claim. Doc. No. 18. To allege fraud under North Carolina law, "the plaintiff must establish that the defendant (1) made a false representation of material fact, (2) knew it was false (or made with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) the plaintiff must be injured by reasonably relying on the false representation." *Food Lion, Inc. v. Capital Cities/ABC, Inc*., 194 F.3d 505, 512 (4th Cir. 1999) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (N.C. 1974)). Also, to satisfy Fed.R.Civ.P. 9(b)'s particularity requirement, a plaintiff must "at a minimum [ ] describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted).

Weber argues that Plaintiffs fail to describe the time and place of the representations, along with how the representations were false or how Noble relied on Weber's emails to induce them to take any action. Doc. No. 18 at 10. The Court disagrees. Plaintiffs' complaint specifically pleads the time and place of various false statements that Weber allegedly made to Noble between the end of May 2019 and July 2019, after the deposit was made. Doc. No. 11 at 10. Plaintiffs' complaint alleges that Weber sent two emails assuring Plaintiffs that their funds were "in transit"

to Noble's bank account despite her having no intention of returning the funds. *Id*. at 11. Plaintiffs' complaint also alleges that Weber falsely represented her identity as "Tina" the assistant to Reinhart's principal "Mark Williams," another false identity. *Id*. These statements related to Reinhart's intentions about the return of the $2.675 million deposit given the failure to fund the loan. Moreover, the dates of the emails are provided, and there are direct quotations from the emails from Weber to Noble. *Id*. at 10. The Fourth Circuit has held that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Accordingly, Plaintiffs have sufficiently alleged the time and place of the allegedly false representations under Rule 9(b).

Weber further contends that Noble could not have relied on Weber's emails to induce them to take any action because her emails were sent after the execution of the Loan Agreement. Doc. No. 18 at 10. Yet, Plaintiffs' complaint clearly pleads reliance by alleging that Weber's representations induced them to act in a manner that benefitted Weber. Doc. No. 11 at 12. According to Plaintiffs, Weber's statements gave Plaintiffs the false impression that Reinhart was working towards fulfilling its obligations under the Loan Agreement. *Id*. at 9. It can be reasonably inferred that by relying on Weber's statements, Plaintiffs chose not to contact the authorities or initiate legal action as soon as Reinhart breached the Loan Agreement and refused to return the deposit.

Alternatively, Weber argues that Plaintiffs' fraud claim fails because Plaintiffs cannot prove that they incurred damages in reliance of Weber's alleged misrepresentations. But as mentioned previously, Plaintiffs allege that they detrimentally relied on Weber's representations

11

by delaying contacting the authorities or taking legal action. Doc. No. 11 at 15; *see see Christopher's Arizona Transp. Serv., Inc. v. Duncan*, 217 F.3d 838 (4th Cir. 2000) (citing *Rowan Cnty. Bd. of Educ. v. United States Gypsum Co.*, 103 N.C. App. 288, 407 S.E.2d 860, 863 (N.C. App. 1991)) ("North Carolina courts have acknowledged that reasonable reliance can be proved by acting or by 'refraining from action' because of the fraudulent misrepresentation"). In sum, Plaintiffs have sufficiently alleged the minimum elements necessary to state a fraud claim and put Weber on notice of the claims against her. Accordingly, her motion to dismiss the fraud claim under Rule 12(b)(6) will be denied.

2. Conversion

The second claim that Weber seeks to dismiss is conversion. Under North Carolina law, "the tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Stitz v. Smith,* 272 N.C. App. 415, 419, 846 S.E.2d 771, 774 (2020) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (alterations omitted)). The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner. *Stitz* 272 N.C. App. at 419, 846 S.E.2d at 774 (internal quotations omitted). "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort. When demand is made, and absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, it is of course a conversion." *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983) (quoting Prosser, The Law of Torts 4th, § 15 at pp. 89–90 (1971)).

12

Accordingly, the "two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008) (citing *Lake Mary Ltd. P'ship. v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552, disc. rev. denied, 557 S.E.2d 539 (2001)). Both prongs are met here. First, Plaintiffs have plainly alleged that they owned the funds at issue in this case.

Second, they have alleged a wrongful conversion. Plaintiffs deposited the funds to Reinhart, and Reinhart was obligated to return said funds per the Loan Agreement. Doc. No. 19 at ¶ 23. After Defendants failed to fund the Loan Agreement, Noble sent Reinhart formal demands to return the full amount of the deposit, *Id*. at ¶ 32, but Defendants refused to return the funds. Moreover, Plaintiffs have directly alleged that Weber actively participated in the alleged conversion (i.e. wrongful retention of the funds) by attempting through an alias "Tina" to mislead Plaintiffs into believing that the funds would be returned. *See Id*. at ¶ ¶ 32, 37, 38. Accordingly, Plaintiffs have adequately stated a claim against Weber for conversion and her motion will be denied as to that claim as well.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Jordana Weber's Motion to Dismiss (Doc. No. 18) is **DENIED;** and

2. This case shall proceed to a resolution on the merits of Plaintiffs' claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 30, 2022

Kenneth D. Bell
United States District Judge