IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00083-KDB-DCK

| | |
|---|---|
| RAYCAP ASSET HOLDINGS LTD.; AND NOBLE BOTTLING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NASAR ABOUBAKARE, ET AL.,<br><br>Defendants. | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Defendant Nasar Aboubakare's Motion to Dismiss. (Doc. No. 36). The Court has carefully considered the motion, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

Plaintiffs' claims arise out of Reinhart Holdings LLC's ("Reinhart") agreement to lend Plaintiff Noble Bottling LLC ("Noble") approximately $55 million for Noble's formation and start-up. (Doc. No. 11). As part of that lending agreement Noble needed to deposit 5 percent of the loan amount, 2.765 million dollars, in a restricted Bank of America account as security for the loan. *Id*. Plaintiff Raycap Asset Holding Ltd. ("Raycap") executed an agreement with Noble to fund the deposit. The loan was never made, and the deposit was ultimately stolen by Reinhart. *Id*. Relevant to this motion, Plaintiffs allege: (1) Aboubakare was brought into the negotiations over the loan agreement by his alleged coworker at Mayfair Capital and co-Defendant Arthur Sherman; (2) Aboubakare was a point of contact between the other individuals involved in the fraud and

1

Plaintiffs; (3) Aboubakare knew Mayfair Capital was owned and operated by "Ana Bourne," a/k/a Jordana Weber, and "Mark Williams," a/k/a Jason Torres; (4) Weber and Torres operated Reinhart and used it to defraud Plaintiffs; and (5) Aboubakare worked closely with Weber and Torres throughout the alleged fraud that led to the theft of 2.765 million dollars.

Plaintiffs filed their original complaint on March 2, 2022. (Doc. No. 1). On March 31, 2022, Plaintiffs filed a "First Amended Complaint" ("FAC") (Doc. No. 11), which is now the operative complaint. In the FAC, Plaintiffs allege claims for Negligence, Fraud, Negligent Misrepresentation, and Breach of Fiduciary duty against Aboubakare. Aboubakare has now moved to dismiss the FAC arguing that the Court lacks personal jurisdiction over him, and that Plaintiffs fail to state a claim upon which relief can be granted. This matter is fully briefed and ripe for the Court's consideration.

## II. DISCUSSION

A. Personal Jurisdiction

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient

for a party to make a prima facie showing." *Barclays Leasing Inc. v National Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. Seim S.R.L.*, 2006 U.S. Dist. LEXIS 92554, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id*.

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quotation and citation omitted). The minimum contacts test requires the plaintiff to show that the defendant "purposefully directed his activities at the residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citation and quotation omitted). This test seeks to ensure that the defendant is not "haled into a jurisdiction

3

solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotations and citations omitted).

The Fourth Circuit has synthesized the due process requirements for asserting specific[1] personal jurisdiction in a three-prong test in which courts "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

Aboubakare argues that the Court lacks personal jurisdiction over him because: (1) he does not own any property in North Carolina; (2) he does not maintain an office in North Carolina; (3) he has never visited North Carolina; and (4) he did not solicit or initiate any business in North Carolina. *See* Doc. No. 36-1. He concedes that there were "two to three" telephone calls between Plaintiffs and himself. That said, Aboubakare argues these calls were after the loan agreement had been signed and funds had been deposited into the account and are therefore insufficient to establish personal jurisdiction. However, the Court finds that Aboubakare's alleged involvement satisfies the Fourth Circuit's three-pong test and therefore the Court may exercise personal jurisdiction over him.

First, Aboubakare has purposefully availed himself of the privilege of conducting activities in North Carolina. The Fourth Circuit has "generally . . . concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the

---

[1] Under the due process clause, a court can exercise personal jurisdiction over a defendant by either "general" or "specific" personal jurisdiction. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co*., 682 F.3d 292, 301 (4th Cir. 2012) Plaintiffs do not allege that the Court has "general" jurisdiction over Aboubakare and therefore the Court need not address it.

defendant 'substantially collaborated' with a forum resident and that joint enterprise constituted an integral element of the dispute." *Tire Eng'g*, 682 F.3d at 302. Aboubakare was allegedly essential to a fraud in North Carolina perpetrated against a North Carolina resident that used an account at Bank of America – a North Carolina based banking institution. Aboubakare represented himself to Plaintiffs as someone familiar with "the PPI process" and "Mark Williams." *See* Doc. No. 37-1. He told Plaintiffs that he was "the person in charge of discussion matters between investors and borrowers," and acted as the point of contact between Plaintiffs and "Mark Williams." *Id*. Aboubakare negotiated or discussed with Plaintiffs "where the funds will be refunded to in the event you request the funds to be returned" and the proposed closing date of the loan. *See id.*; Doc. No. 37-2. These contacts, along with the multiple phone calls, establish Aboubakare engaged in business activities directed at a North Carolina business and resident and that he had significant high-quality communications about a loan agreement being transacted, and theoretically to be performed, in North Carolina. As a result, Aboubakare has purposefully availed himself of the privilege of conducting activities in North Carolina.

Second, Plaintiffs' claims arise out of Defendant Aboubakare's activities directed at North Carolina. As noted above, Aboubakare acted as a representative of "Mark Williams" fielding Plaintiffs' questions on his behalf. He asked Plaintiffs for information on behalf of "Mark Williams" and Reinhart to draft and finalize the agreement. *See* Doc. Nos. 37-1-5. Aboubakare's purported concealment of the reality of the agreement and the identities of "Mark Williams" and "Ana Bourne" all allegedly caused Plaintiffs to move forward with funding the Deposit, which was eventually stolen. *See* Doc. No. 11, ¶ 41. Accordingly, Aboubakare's alleged actions were part of "a seamless series of business transactions" leading to "the filing of the Complaint." *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

Lastly, the exercise of personal jurisdiction would be constitutionally reasonable. This prong of the analysis "ensures that litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *CFA Inst.*, 551 F.3d at 296. The Court's inquiry is guided by the burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief. *Id.* Weighing these interests, the Court finds that the exercise of personal jurisdiction against Aboubakare in this forum is constitutionally permissible. North Carolina has a substantial interest in protecting its residents and businesses from fraudulent conduct and the burden on Aboubakare does not rise to the level necessary to overcome that substantial interest. The Court therefore finds that it may constitutionally exercise personal jurisdiction over Aboubakare and will deny the Motion as to that ground.

B. <u>Failure to State a Claim</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 U.S. App. LEXIS 388, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts

6

presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc*., 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this way, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Aboubakare seeks, in a conclusory manner[2], the dismissal of all the claims against him because there are no allegations that: (1) he ever spoke to any agent or representative of the Plaintiffs before Plaintiffs entered into the loan agreement; (2) he was a party to the loan agreement; (3) Plaintiffs ever engaged and retained Aboubakare as their employee, agent, independent contractor or broker in connection with the transaction; (4) Plaintiffs suffered damages arising from his conduct on or about April 19, 2019; or (5) Plaintiffs could have relied to their detriment upon any representation or conduct of Aboubakare that only occurred post-transaction and post-breach. *See* Doc. Nos. 36-1, 41. However, after a review of the record, the Court finds that Plaintiffs have sufficiently alleged their claims against Aboubakare. Plaintiffs contend Aboubakare, acting as a broker, made various misrepresentations and omissions that induced Noble to enter into the loan agreement with Reinhart, Noble and Raycap to enter into the funding agreement, and Raycap to make the Deposit into the Restricted Account. (Doc. No. 11, ¶ 56, 63). Plaintiffs claim Aboubakare should have known that "Mark Williams' and "Tina" were

---

[2] Aboubakare makes no attempt in either his opening brief or reply brief to distinguish his argument as to each claim. *See* Doc. Nos. 36-1, 41. Rather, he makes one argument which presumably applies to all claims.

7

in fact Torres and Weber (who allegedly used Reinhart to facilitate the fraud against Raycap and Noble) and that Reinhart, Torres, and Weber had no intention of ever funding the loan or complying with the terms of the loan agreement. *Id*. ¶ 74. Plaintiffs also allege that as a direct and proximate result of Aboubakare's actions, Raycap and Noble each have suffered material harm and substantial monetary damages of at least $2,765,000. *Id*. ¶ 75.

Viewing these facts and the inferences to be drawn from them in the light most favorable to Plaintiffs, the Court finds that the complaint contains sufficient facts that if accepted as true state plausible claims for relief. While Aboubakare may of course continue to dispute Plaintiffs' version of events, a ruling on the merits of these claims must wait until the full development of the record.

**NOW THEREFORE IT IS ORDERED THAT** Defendant Aboubakare's Motion to Dismiss, (Doc. No. 36), is **DENIED.**

**SO ORDERED**

Signed: December 21,

Kenneth D. Bell
United States District Judge