## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:22-CV-00083-KDB-DCK

| | |
|---|---|
| RAYCAP ASSET HOLDINGS LTD; NOBLE BOTTLING, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>ARTHUR N. SHERMAN, ET AL.,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Arthur Sherman's Motion to Set Aside Entry of Default (Doc. No. 50), which Plaintiffs oppose. The Court has reviewed the motion and considered the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the Motion.

## I.    BACKGROUND

This matter arises out of a business transaction between Plaintiffs and Reinhart Holdings LLC in which Reinhart was to lend Noble approximately $55 million for its formation and start-up. The loan agreement required Noble to provide a $2,765,000 deposit. To fund the deposit, Noble entered into a separate loan agreement with Plaintiff Raycap to obtain the $2,765,000, which was then transferred to a purportedly "restricted" bank account at Bank of America (which was in fact not restricted). After Noble made the required deposit, Reinhart failed to timely fund the loan. Noble sent Reinhart formal demands to return the full deposit in accordance with the restricted bank account parameters. Yet these demands failed and Noble never recovered the $2,765,000 deposit, which had been taken from the bank account.

1

Plaintiffs allege that throughout this transaction Sherman, who was allegedly an agent for Mayfair Capital and introduced Noble to Reinhart, failed to: (i) disclose to Plaintiffs that the brokerage firm, Mayfair Capital was owned and operated by Jordana Weber, a known fraudster; (ii) disclose that he did not have any prior dealings with "Mark Williams" of Reinhart; and (iii) disclose that he did not perform any due diligence regarding this investment source. *See* Doc. No. 51.

On March 2, 2022, Plaintiffs filed their Complaint, which they subsequently amended. Sherman concedes that he was served with a copy of the Amended Complaint but maintains there was no summons attached. *See* Doc. No. 50-3. Plaintiffs retort that they properly included a summons. Sherman did not respond to the Amended Complaint, and Plaintiffs filed a motion for entry of default against Sherman, which the Clerk of Court granted on the next business day. *See* Doc. No. 22. Sherman claims that he did not receive notice of the entry of default. Plaintiffs later moved for default judgment against Sherman. *See* Doc. No. 47. After receiving notice of the motion for default judgment, Sherman retained counsel and has now moved to set aside the entry of default. *See* Doc. No. 50.

## II.   DISCUSSION

Rule 55(c) of the Federal Rules of Civil Procedure allows the Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). While "good cause" is not defined in Rule 55(c), when deciding whether to set aside an entry of default a district court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The Court will address each of the six factors in turn.

2

Furthermore, because of the Court's "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," doubts about whether relief should be granted will be resolved in favor of setting aside the default. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969).

### a. *Whether the Movant has a Meritorious Defense*

To set aside a default, "'all that is necessary to establish the existence of a meritorious defense is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party.'" *Davis v. Univ. of N.C. at Greensboro*, No. 1:19CV661, 2022 U.S. Dist. LEXIS 6245, at *4 (M.D.N.C. Jan. 12, 2022) (citing *Carter v. City of High Point*, No. 1:17CV148, 2017 U.S. Dist. LEXIS 147223, 2017 WL 4043751, at *3 (M.D.N.C. Sept. 12, 2017) (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)) (internal quotation marks omitted)). The moving party "need not prove his meritorious defense by a preponderance of the evidence." *See J & J Sports Prods., Inc. v. Argueta*, No. 1:12cv1329, 2013 U.S. Dist. LEXIS 159365, 2013 WL 5960859, at *2 (M.D.N.C. Nov. 7, 2013). Indeed, the "underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (internal quotation marks omitted) (alterations in original) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2697, p. 531 (2d ed. 1983)).

Sherman argues that he has a meritorious defense because: (1) the Court lacks personal jurisdiction over him; (2) Plaintiffs failed to properly serve him; and (3) the Amended Complaint fails to state a claim upon which relief can be granted. *See* Doc. Nos. 50, 50-2. Plaintiffs,

unsurprisingly, dispute Sherman's legal analysis. Plaintiffs argue that the Court has personal jurisdiction over Sherman because he directed his allegedly tortious behavior at North Carolina. *See* Doc. No. 51. Plaintiffs also contend that they have alleged with particularity "the false representations made by Defendant Sherman to Plaintiffs, that these misrepresentations were calculated, intended to, and did deceive Plaintiffs, for the benefit of Defendants, resulting in damages." *Id.*

As the Court has already ruled, a motion to set aside an entry of default is not a motion to dismiss under Rule 12(b)(2) or 12(b)(6). *See* Doc. No. 35. As a result, determining which party would prevail on such a motion is not the relevant inquiry. The question is simply whether Sherman has met the low bar of showing "some possibility" of ultimate success. *Augusta*, 843 F.2d at 812. Sherman has met this low bar. Sherman has shown that he has plausible arguments related to personal jurisdiction and the merits of the claims against him which could lead to an outcome contrary to the result achieved by the default. Accordingly, this factor weighs in favor granting the motion.[1]

> ### b. *Acted with Reasonable Promptness*

Whether a party has taken reasonably prompt action "'must be gauged in light of the facts and circumstances of each occasion.'" *Superior Performers, Inc. v. Thornton*, No. 1:20-cv-00123, 2020 U.S. Dist. LEXIS 189843 (M.D.N.C. Oct. 14, 2020) (quoting *Moradi*, 673 F.2d at 727). Sherman argues that once he learned of the motion for default judgment, he acted promptly to secure counsel and file this motion. Sherman maintains that because he was not served with a copy of the summons nor the motion for an entry of default his promptness should be measured from

---

[1] The Plaintiffs candidly concede that this factor weighs in favor of Sherman. *See* Doc. No. 51, p, 10 ("[the factor of meritorious defense] weighs in favor of defendant.") (citing the Court's earlier order).

Case 3:22-cv-00083-KDB-DCK   Document 54   Filed 03/21/23   Page 4 of 8

when he obtained notice of the motion for default judgment. Alternatively, Sherman argues that if the Court determines that he was properly served he was reasonably confused because of his lack of familiarity with the legal process. *See* Doc. No. 50-1. Plaintiffs note that after Sherman was served with, at least, the Amended Complaint he did not contact them or retain an attorney for 322 days. *See* Doc. No. 51. Plaintiffs reason that this refusal to respond in any way for nearly a year establishes that Sherman did not act with the required promptness. And the Court agrees.

District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, thirty-two, and thirty-eight days after default was entered before attempting to set it aside. *See J & J Sports Prods., Inc. v. Casillas,* No. 1:12-CV-5, 2013 WL 784544, at *7 (M.D.N.C. Mar. 1, 2013)*; United States v. $10,000.000 in United States Currency*, 2002 WL 1009734, *3 (M.D.N.C. Jan. 29, 2002); *Esteppe v. Patapsco & Back Rivers R.R. Co*., 2001 WL 604186, *4 (D.Md. May 31, 2001); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp*., 130 F. Supp. 2d 712, 718 (D.Md.2001).

Some courts have found even longer delays acceptable. *See, e.g., Lolatchy v. Arthur Murray, Inc*., 816 F.2d 951, 952-954 (4th Cir. 1987) (allowing case to proceed on the merits even though the moving party waited ten months after court entered default before moving to set aside default); *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding that reasonable promptness factor favored setting aside default where moving party did not respond for more than two months after clerk entered default but filed an affidavit 12 days after the motion for a default judgment was filed).;*United States v. Stover*, No. 3:20-cv-00579-RJC-DCK, 2021 U.S. Dist. LEXIS 159308, at *6 (W.D.N.C. Aug. 24, 2021) (finding that the defendants acted with reasonable promptness when they moved to set aside entry of default about forty-nine days after the entry of default and three days after a motion for a default judgment). In this matter, the Court found that Defendant

5

Aboubakare acted with reasonable promptness when he waited forty-nine days after notice of a motion for an entry of default for counsel to enter an appearance. *See* Doc. No. 35.

Here, Sherman waited about eight and a half months after the motion for entry of default and fourteen days after the motion for default judgment for counsel to enter an appearance. *See* Doc. Nos. 21, 47, 49. While the Court recognizes Sherman's potential confusion and the alleged lack of a summons and notice of the entry of default, this is simply too long for the Court to find that Sherman acted with "reasonable promptness" when he undisputedly received the Amended Complaint. This factor therefore weighs against setting aside the entry of default.

### c.  *Personal Responsibility of Defaulting Party*

When determining the responsibility of the party for the default, the Fourth Circuit focuses on the "source of the default." *Davis*, No. 1:19CV661, 2022 U.S. Dist. LEXIS 6245, at *9. When the party's own action or inaction is the source of the default, this factor will weigh against setting aside the default. *Id*. Sherman argues that he is not personally responsible for the default because he was never served with a summons notifying him that he needed to take action. He also again argues that any alleged responsibility should be mitigated because of his confusion regarding the legal process. Plaintiffs argue that Sherman concedes that he is personally responsible. Plaintiffs observe that it is undisputed that Sherman received the Amended Complaint and that the Court issued an electronic summons. *See* Doc. Nos. 10, 51. Still, Sherman waited ten months to file anything with the Court.

Again, Sherman concedes that he was aware, in some manner, of this matter in early April 2022. *See* Doc. Nos. 50-1, 50-2. Yet, he failed to retain counsel or file a timely responsive pleading. Sherman therefore bears *some* personal responsibility for the default. That said, on the record before the Court it is unclear whether Sherman received a summons, and this mitigates his

responsibility. The "paramount function of serving a summons is to provide formal notice to the defendant that action is required to avoid liability and preserve his or her rights." *United States v. Perez*, 752 F.3d 398, 406 (4th Cir. 2014); *id.* ("Establishing notification to a civil defendant through proper service of the summons is critical since, among other things, service of the summons triggers defendant's duty to file a responsive pleading to the complaint."). The potential absence of the formal notice to respond could have reasonably led to Sherman's alleged confusion. Thus, the Court finds that this factor, to a minimal extent, weighs against setting aside the default.

### d. Prejudice to Plaintiffs

Delay alone does not constitute prejudice to the opposing party in the context of a motion to set aside an entry of default. *Colleton*, 616 F.3d at 418 (citation omitted). And no prejudice arises from losing a quick default-based victory. *See Davis, No. 1:19CV661, 2022 U.S. Dist. LEXIS 6245, at *11* (citing *United States v. Manriques*, Nos. 1:10CR440-1, 1:13CV444, 2013 U.S. Dist. LEXIS 146993, 2013 WL 5592191, at *5 (M.D.N.C. Oct. 10, 2013)). Rather, prejudice occurs when evidentiary issues arise, like that of "[a] missing witness in the case whose testimony was made unavailable by the delay, . . . any records made unavailable by the delay, . . . [or] any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay." *Lolatchy,* 816 F.2d at 952. Plaintiffs admit that they "are currently unaware of any loss of evidence or witness testimony that has occurred on account of the Defendants' default." *See* Doc. No. 51 p. 10. So, this factor supports setting aside the entry of default.

### e. History of Dilatory Action

History of dilatory action is generally examined "apart from the delay causing the default itself." *Superior Performers*, 2020 U.S. Dist. LEXIS 189843, 2020 WL 6060978, at *3 (citing *Colleton Preparatory*, 616 F.3d at 418). While noting Sherman's delay in responding and

obtaining counsel, Plaintiffs concede that "a historical trend with respect to Defendant's participation has not yet developed." *See* Doc. No. 50-1, p. 10. As a result, this factor supports setting aside the default.

### f. *Availability of Sanctions Less Drastic*

Lastly, both parties agree that there are less drastic sanctions available, specifically requiring Sherman to pay Plaintiffs' costs and expenses related to seeking default.[2] *See* Doc. Nos. 50-1, 51. As a result, this factor supports setting aside the entry of default.

### III. CONCLUSION

In sum, having considered and weighed all the relevant factors the Court finds that there is good cause to set aside Defendants' entry of default under Rule 55(c). Although Sherman's failure to promptly respond does give the Court some pause, the factual dispute over the service of summons and the strong preference that claims be disposed of on their merits support granting the Motion.

**NOW THEREFORE IT IS ORDERED THAT** Defendant Sherman's Motion to Set Aside Entry of Default, (Doc. No. 50), is **GRANTED**.[3]

**SO ORDERED.**

Signed: March 21, 2023

Kenneth D. Bell
United States District Judge

---

[2] While the parties agree that there are less drastic sanctions available, that issue is not before the Court. Therefore, the Court will defer ruling on any sanctions until that question is properly before it in accordance with Local Rule 7.1(b).

[3] The Court will also deny Plaintiff's Motion for Default Judgment against Sherman, Doc. No. 47, as moot.

8