IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00083-KDB-DCK

| | |
|---|---|
| NOBLE BOTTLING, LLC, AND RAYCAP ASSET HOLDINGS LTD., <br><br>　　Plaintiffs, <br><br>　　v. <br><br>ARTHUR SHERMAN, ET AL., <br><br>　　Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Arthur Sherman's Motion to Dismiss, (Doc. No. 55). The Court has reviewed this motion, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will **DENY** the motion.

## I.　　FACTUAL BACKGROUND[1]

This matter arises out of a business transaction between Plaintiffs and Reinhart Holdings, LLC in which Reinhart was to lend Noble Bottling, LLC approximately fifty-five-million-dollars for its formation and start-up. The loan agreement required Noble to provide a $2,765,000 deposit. To fund the deposit, Noble entered into a separate loan agreement with Plaintiff Raycap Asset Holding, Ltd. ("Raycap") to obtain the $2,765,000, which was then transferred to an allegedly "restricted" bank account at Bank of America. After Noble made the required deposit, Reinhart failed to timely fund the loan. Noble sent Reinhart formal demands to return the full deposit in

---

[1] Consistent with the 12(b)(6) standard, the facts have been drawn from the Amended Complaint and taken as true.

accordance with the restricted bank account parameters. Yet these demands failed and Noble never recovered the $2,765,000 deposit, which had been withdrawn from the bank account.

Relevant to this motion, Plaintiffs allege that throughout this transaction, Arthur Sherman failed to disclose that: (1) the brokerage firm, Mayfair Capital Investment Management, Ltd., was owned and operated by known fraudster Jordana Weber; (2) he did not have any prior dealings with "Mark Williams" of Reinhart; and (3) he did not perform any due diligence regarding this investment source. *See* Doc No. 11 at ¶¶ 19, 21, 74. Instead, Sherman, acting in his capacity as a broker, allegedly claimed to be a Mayfair Capital partner and introduced Noble to Reinhart to initiate the loan agreement. *See* Doc. No. 11 at ¶ 18.

On March 2, 2022, Plaintiffs filed their original complaint. Plaintiffs later filed a "First Amended Complaint," which is now the operative complaint. *See* Doc. No. 11. In their Amended Complaint, Plaintiffs allege claims for negligence, fraud, negligent misrepresentation, and breach of fiduciary duty against Sherman. *See* Doc. No. 11 at ¶ 50- 82. Sherman has now moved to dismiss all claims against him. *See* Doc. No. 55. The matter is now ripe for the Court's consideration.

## II. DISCUSSION

Sherman makes three arguments in support of his Motion. He first argues that the Court lacks personal jurisdiction over him because he has no ties to North Carolina. Second, he claims that Plaintiffs failed to properly serve him with a copy of the summons. And third, he argues the Amended Complaint fails to state any actionable claim against him. *See id.* The Court will address each argument in turn.

### A. Personal Jurisdiction

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,

2

416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." *Barclays Leasing Inc. v National Bus. Sys., Inc*., 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. Seim S.R.L*., 2006 U.S. Dist. LEXIS 92554, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id*.

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech*., 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

3

To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quotation and citation omitted). The minimum contacts test requires the plaintiff to show that the defendant "purposefully directed his activities at the residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citation and quotation omitted). This test seeks to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotations and citations omitted).

The Fourth Circuit has synthesized the due process requirements for asserting specific[2] personal jurisdiction in a three-prong test in which courts "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

Sherman's personal jurisdiction argument can be condensed into a simple articulation: he does not engage in business in North Carolina, live in North Carolina, nor did he agree to be bound by North Carolina courts. From this, Sherman concludes that this Court cannot exercise personal jurisdiction over him. He is mistaken. This is not to say that Sherman's factual assertions are

---

[2] Under the due process clause, a court can exercise personal jurisdiction over a defendant by either "general" or "specific" personal jurisdiction. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) Plaintiffs do not allege that the Court has "general" jurisdiction over Sherman and therefore the Court need not address it.

wholly incorrect. Rather, despite the absence of "boots on the ground" contacts with North Carolina, this Court may still exercise personal jurisdiction over him because he allegedly participated in a scheme to defraud North Carolina residents in North Carolina using a North Carolina bank.

During the course of this alleged scheme, Sherman substantially collaborated with Noble, a North Carolina business, as a broker for the loan agreement. *See* Doc. No. 11 at ¶¶ 5, 18. A foreign defendant purposefully avails himself of the privilege of conducting business in North Carolina when he "substantially collaborates" with a North Carolina resident and that collaboration is an integral element of the dispute. *See Tire Eng'g & Distribution, LLC,* 682 F.3d at 302. Here, Sherman allegedly : (1) introduced Noble to Reinhart; (2) lied about his past dealings with "Mark Williams" and Williams' reliability as an investor; and (3) continued to assure Plaintiffs of the deal's, and Williams', propriety after the loan amount was not funded. *See* Doc. No. 11 at ¶¶ 5, 18, 63, 65. These contacts were significant impactful interactions that induced Noble to enter into the loan agreement and delayed Plaintiffs' realization that the deal was fraudulent. For that reason, Sherman's substantial collaboration with a North Carolina business and resident form the crux of this dispute as it relates to Sherman.

Likewise, Plaintiffs' claims against Sherman arise directly out of Sherman's conduct directed at North Carolina. Sherman acted as a conduit for "Mark Williams" and fielded questions on his behalf to draft and finalize the loan agreement. *See* Doc. No. 11 at ¶ 22. In answering the Plaintiffs' questions, Sherman continually assured Plaintiffs that "Mark Williams" was a legitimate investor and that the loan agreement was legitimate. *Id.* at ¶ 40. This conduct, along with Sherman's concealment of his actual position and relationship with Mayfair Capital, caused Plaintiffs to move forward with funding the Deposit and signing the loan agreement. *See id.* at ¶¶

5

63, 66, 74. Put another way, Sherman's conduct was part of "a seamless series of business transactions" that led to the filing of the Amended Complaint. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

And finally, the exercise of personal jurisdiction would be constitutionally reasonable. This prong "ensures that litigation is not 'so gravely difficult and inconvenient' as to place the defendants at a 'severe disadvantage in comparison to his opponent.'" *Id.* at 296. The Court's inquiry is guided by the burden on the defendant, interest of the forum state, and the plaintiffs' interest in obtaining relief. *Id.* Weighing these interests, the Court finds that the exercise of personal jurisdiction over Sherman in this forum is constitutionally permissible. North Carolina has a substantial interest in protecting its residents and businesses from fraudulent conduct and the burden on Sherman does not rise to the level necessary to overcome that substantial interest.

In sum, the Court finds that it may constitutionally exercise personal jurisdiction over Sherman and will deny the Motion as to that ground.

### B.     Insufficient Service

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, while a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. *See* Fed. R. Civ. P. 12(b)(4), (b)(5); *Washington v. Cedar Fair, L.P.*, 2023 U.S. Dist. LEXIS 16559, at *5. In other words, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act of delivery. *Id*.

When service of process is challenged, the plaintiff bears the burden of establishing that process was sufficient, and that service of process was carried out in accordance with Rule 4 of the Federal Rules of Civil Procedure. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)

6

(holding the plaintiff must prove service of process if challenged); *see also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (unpublished). In determining whether a plaintiff has satisfied his burden, the court must interpret the technical requirements liberally "as long as the defendant had actual notice of the pending suit." *Id.* "When the process gives the defendant actual notice of the pendency of the action, the rules ... are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Still, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.*

Both parties have submitted affidavits to support their position on the delivery of the summons. In their affidavit, Plaintiffs describe their diligence in serving Sherman, FedEx's confirmation of delivery, and the nearly ten months they waited for his response. *See* Doc. No. 56-1. On the other hand, both Sherman and his wife affirm that they did not receive a summons along with the Amended Complaint. *See* Doc. Nos. 55-1, 55-2. These dueling affidavits are at loggerheads. That said, Sherman does not dispute that he received a copy of the Amended Complaint. *See* Doc. No. 55-1. Sherman's receipt of the Amended Complaint necessarily made him aware of the Plaintiffs' allegations against him.[3,4] While he may have been "hopeful" that Plaintiffs would "come to understand" that he was an innocent party, Sherman had actual notice of this matter for almost a year. *See id.* Thus, in light of the irreconcilability of the affidavits, the Court's strong preference to decide matters on their merits, and Sherman's actual notice of this

---

[3] Sherman concedes that he knew of the ongoing criminal investigation. *See* Doc. No. 55-1.
[4] The Court also issued an electronic summons to Sherman on March 30, 2022. *See* Doc. No. 10.

7

suit, the Court finds that dismissal under Rules 12(b)(4) and (5) would be inappropriate.[5] *See, e.g., Lerma v. Sylistics Los Angeles Car Club, Inc.,* No. CV 12-06704 DDP JEMX, 2015 WL 349310, at *3 (C.D. Cal. Jan. 23, 2015) (finding that a defendant's affidavit stating that he was never personally handed papers did not constitute strong and convincing evidence to establish that he was not properly served).

>   C.     **Failure to State a Claim**

Along with his jurisdictional arguments, Sherman moves to dismiss all of Plaintiffs' claims under Rule 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this way, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

---

[5] Plaintiffs filed a motion under Federal Rules of Civil Procedure 4(m) in the alternative to extend time to re-serve the summons. *See* Doc. No. 57. However, because the Court finds that the initial service of process was sufficient that motion will be denied as moot.

### 1. Fraud

To allege fraud under North Carolina law, "the plaintiff must establish that the defendant (1) made a false representation of material fact, (2) knew it was false (or made with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) the plaintiff must be injured by reasonably relying on the false representation." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (N.C. 1974)). Also, to satisfy Fed.R.Civ.P. 9(b)'s particularity requirement, a plaintiff must "at a minimum [] describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted). The Fourth Circuit has held that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Sherman argues that Plaintiffs have failed to allege that he had the "necessary state of mind for fraud" or that he knew the transaction was fraudulent. *See* Doc No. 55. Additionally, relevant to Rule 9(b)'s particularity requirement, Sherman contends that Plaintiffs have failed to plead the time, place, manner, and the recipients of the alleged fraudulent communications. *See id*. These arguments are unpersuasive.

Plaintiffs have pled facts, which taken as true, establish Sherman's "necessary state of mind for fraud" and his awareness of the fraudulent nature of the transaction. Sherman represented to Noble that he was a partner at Mayfair Capital. *See* Doc. No. 11 at ¶ 18. Yet Nasar Aboubakare,

9

who was brought into the negotiations as an additional broker by Sherman, admitted to Noble that Sherman was not a partner with Mayfair Capital. *See* Doc. No. 11 at ¶¶ 20, 68-69. Among the other false representations made to Noble, Sherman allegedly vouched for Williams and Reinhart as legitimate funding sources, a falsity which would have been uncovered with a simple internet search if Sherman had done the necessary due diligence as he alleged he did to Plaintiffs. *See* Doc. No. 11, ¶¶ 18-19, 58, 63. These alleged misrepresentations, taken as true, are sufficient, at this stage, to establish Sherman's fraudulent intent and awareness of the fraudulent nature of the transaction.

In addition, Plaintiffs have met Rule 9(b)'s heightened pleading requirement. Plaintiffs have alleged a continuous sequence of events from October 2018 through July 2019 where Sherman's conduct was an integral part of the fraud. *See United States ex rel. Grant v. United Airlines, Inc.,* 912 F.3d 190, 197 ( 4th Cir. 2018) (explaining that a plaintiff can allege a pattern of conduct that would "necessarily have led [] to submission of false claims."). In brief, around October 2018 Noble engaged Sherman, who then introduced Noble to Reinhart. Doc. No. 11 at ¶ 18. Sherman then made misrepresentations and assurances to Plaintiffs that the agreement was not a fraud even after Reinhart materially breached the agreement in April 2019. *See id*. at ¶¶ 31, 40. These misrepresentations were allegedly made to the principals of Noble and benefited Sherman and the other fraudsters. *Id*. This continuous sequence of events satisfies the requirements of Rule 9(b). *See Nahigian v. Juno Loudon, LLC*, 684 F.Supp.2d 731, 738 (E.D.Va. 2010) ("the exact date and time" of each misrepresentation claim is not needed where Plaintiffs alleged that the misrepresentations were made throughout the spring of 2007).

In sum, taking the allegations in the Amended Complaint as true together with all reasonable inferences, the Court finds that Plaintiffs have adequately pled their fraud claim and

10

Sherman has been adequately appraised of the facts needed to prepare a defense. Accordingly, dismissal under Rule 12(b)(6) and Rule 9(b) would be inappropriate.

### 2. Negligence and Negligent Misrepresentation

To make out a prima facie case of negligence, "a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." *Parker v. Town of Erwin*, 776 S.E.2d 710 (N.C. App. 2015) Similarly, negligent misrepresentation "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988). The heightened requirements for allegations of fraud apply equally to a claim for negligent misrepresentation. *Topshelf Mgmt., Inc v. Campbell-Edwald Co.*, 117 F.Supp.3d 722, 727 (M.D.N.C 2015) ("Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b)[.]").

Sherman argues that Plaintiffs do not allege any agreement, contract, or relationship between the parties sufficient to support a finding that a broker-dealer relationship existed. *See* Doc. No. 55. However, Sherman allegedly played a crucial role in initiating the loan agreement, vouched for the credibility of "Mark Williams," and introduced Noble to Reinhart, all while acting as the broker for the loan agreement. *See* Doc. No. 11, ¶¶ 18-19, 63. Also, Sherman continually assured Plaintiffs that the agreement was legitimate and allegedly made misrepresentations to prevent Plaintiffs from discovering the fraud. *See* Doc. No. 11 at ¶ 78-80. Taking these allegations as true, Sherman's role in initiating the loan agreement, his "active lying" about his experience with "Mark Williams," and Plaintiffs' justifiable reliance on his statements are sufficient for

11

Plaintiffs' negligence claims to survive. *See Raritan Steel Co.,* 367 S.E.2d at 617 ("liability should extend not only to those with whom [the professional] is in privity or near privity, but also to those persons, or class of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely."). Accordingly, the Court will allow Plaintiffs' negligence claims to proceed.

### 3. Breach of Fiduciary Duty Claim

To plead a breach of fiduciary duty, a plaintiff must allege facts to show that: (1) the defendant owed the plaintiff a fiduciary duty of care, (2) the defendant violated that fiduciary duty of care, and (3) this breach of duty proximately caused injury to the plaintiff. *Farndale Co., LLC v. Gibellini*, 628 S.E.2d 15, 20 (N.C. App. 2006). Under North Carolina law, fiduciary relationships are characterized by "confidence reposed on one side and resulting domination and influence on the other." *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 266 (N.C. 2014).

Sherman contends that Plaintiffs cannot establish a broker-client relationship or that Sherman "had all the cards" to breach his fiduciary duty. *See* Doc. No. 55. However, Plaintiffs' breach of fiduciary duty claims survive for substantially the same reasons as their negligence claims. Again, Sherman — acting as an alleged partner for Mayfair Capital and broker for the loan agreement — allegedly introduced Noble to Reinhart. *See* Doc. No. 11 at ¶ 18. Plaintiffs contend that they relied on Sherman to initiate the loan agreement and were induced by Sherman's credibility. Doc. No. 11 at ¶ 78-79. Plaintiffs also allege that they trusted Sherman when he vouched for "Mark Williams" as a wealthy individual (a statement that Plaintiffs contend Sherman neglected to verify) and that Sherman failed to do the required due diligence to verify the agreement. *See* Doc. No. 11 at ¶ 64. Accordingly, viewing these facts and the inferences to be

drawn from them in the light most favorable to Plaintiffs, the Court finds that the complaint contains sufficient facts that, if accepted as true, state a plausible claim for relief.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 55) is **DENIED;** and
2. This case shall proceed to trial on the merits in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 13, 2023

Kenneth D. Bell
United States District Judge